UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| EMMIE JONES, as Parent and Guardian of MJ, a minor, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Docket no. 2:11-cv-437-GZS<br>)<br>) |
| FAIRBANK RECONSTRUCTION CORP. et al, | )<br>)<br>) |
| Defendants. | ) |

## ORDER ON PARTIAL MOTION TO DISMISS CROSSCLAIMS

Before the Court is Greater Omaha Packing Company's Partial Motion to Dismiss Fairbank's Crossclaims (ECF No. 23).

On November 14, 2011, Plaintiff Emmie Jones filed her eight-count complaint naming both Fairbank Reconstruction Corp. ("Fairbank") and Greater Omaha Packing Company, Inc. ("GOPAC") as Defendants. In relevant part, Fairbank answered the complaint (ECF No. 18) by filing multiple crossclaims against GOPAC, including: (1) Breach of Contract (Count I), (2) Contractual Indemnity (Count II), (3) Contribution and Indemnity on Plaintiff's Strict Liability Claim (Count III), (4) Contribution and Indemnity on Plaintiff's Breach of Warranty Claim (Count IV), and (5) Contribution and Indemnity on Plaintiff's Negligence Claim (Count V). Via the pending motion, GOPAC seeks dismissal of Count I and partial dismissal of Count II to the extent that both claims seek damages above and beyond what Fairbank might pay in connection with Plaintiff's claims. GOPAC primarily argues that allowing Fairbank to press these broader crossclaims violates personal jurisdiction. As explained herein, the Court agrees and GRANTS the Partial Motion to Dismiss.

I. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) allows a party to seek dismissal of any claim based on lack of personal jurisdiction. The party asserting the claim has the burden of proving the existence of the requisite personal jurisdiction. See Mass. Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

The personal jurisdiction of a federal court sitting in diversity is equivalent to that of a state court sitting within the forum. Tice v. Taiwan Shin Yeh Enterprise Co., Ltd., 608 F. Supp. 2d 119, 121 (D. Me. 2009) (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996)). Thus, to establish personal jurisdiction over a defendant, the plaintiff must demonstrate both that Maine's long-arm statute grants jurisdiction and that exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution. Id. (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002)). Because Maine's long-arm statute is coextensive with the permissible exercise of personal jurisdiction under the Constitution, the due process inquiry controls the instant case. See 14 M.R.S.A. § 704-A; Murphy v. Keenan, 667 A.2d 591, 593 (Me. 1995).

For the Court constitutionally to exercise personal jurisdiction, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction under the Due Process Clause—general and specific. General jurisdiction exists when "the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Negron-

Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 25 (1st Cir. 2007) (internal quotation omitted). By contrast, specific jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Id. at 24 (internal quotation omitted). Thus, "[q]uestions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999).

To exercise specific personal jurisdiction, the Court must find that there are sufficient minimum contacts with the forum. The minimum contacts analysis is broken into three categories—relatedness, purposeful availment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008) (internal quotation omitted). With respect to each claim asserted, jurisdiction is lacking "whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). For that reason, "the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." Id. (internal quotation and alteration omitted).

To conduct its personal jurisdiction analysis, the Court applies the prima facie standard, and accepts any proffered facts construing them in the light most favorable to the party asserting the claim, in this case, the cross-claimant. See Mass. Sch. of Law, 142 F.3d at 34. Additionally, the Court considers any uncontradicted facts put forward by movant, in this case, the cross-claim defendant. See id. In the section that follows, the Court puts forth the relevant facts pursuant to that standard.

## II. FACTUAL BACKGROUND

Fairbank, a New York corporation with a principal place of business in Asheville, New York, is in the business of processing and selling ground beef, primarily to grocery store chains. All of the ground beef sold by Fairbank is processed in Ashville, New York using raw beef trim, which Fairbank purchases from other beef packing establishments.

GOPAC, a Nebraska corporation with a principal place of business in Omaha, Nebraska, operates a beef slaughter and fabrication establishment. GOPAC has a weekly production of between 14,000 and 15,000 steers, which yields approximately 150,000 boxes of beef and variety meats, which are sold throughout the United States and exported to over 50 countries around the world. As part of its operations, GOPAC sells raw beef trim. During the time period relevant to this case, GOPAC supplied raw beef trim to Fairbank with the understanding that Fairbank would process the trim into ground beef products for human consumption.

In early 2009, GOPAC signed Fairbank's "Product (Raw Material) Guarantee." Fairbank maintains that under the terms of this Guarantee GOPAC is required to indemnify Fairbank for "all claims, damages, causes of action, suits, proceedings, judgments, charges, losses, costs, liabilities and expenses (including attorney's fees) arising from any [GOPAC] products . . ., that do not comply with the provisions of [Fairbank]'s Raw Material Specifications or that are caused by the negligence or intentional misconduct of [GOPAC], its' Agents and employees." (Fairbank Answer & Cross-Claim (ECF No. 18) at 25.) Fairbank further alleges that GOPAC provided raw beef trim to Fairbank on or around September 11, 2009 that did not comply with the Raw Material Specifications because it contained *E. coli* O157:H7. On September 14, 15, and 16, 2009, Fairbank processed this GOPAC trim at its Ashville, New York facility. The end

4

result was ground beef that was then distributed to multiple retail chains, including Shaw's, which operates multiple grocery stores in Maine.

On October 31, 2009, Fairbank issued a voluntary recall of 545,699 pounds of ground beef, which had been processed at its Ashville, New York facility on September 14, 15 and 16, 2009. Fairbank's recall was based on analysis of epidemiological data collected by public health agencies investigating a cluster of *E. coli* O157:H7 illnesses ("2009 Northeast Outbreak"). In this action, Plaintiff Emmie Jones, alleges that her child, M.J., was one of the people sickened in the 2009 Northeast Outbreak.

### III.   DISCUSSION

Before turning to the crux of GOPAC's personal jurisdiction arguments, the Court clarifies the crossclaims at issue. With respect to Count II, GOPAC's Motion acknowledges that Count II may proceed as a crossclaim to the extent Fairbank seeks contractual indemnity on any fees or expenses related to the underlying claims of Plaintiff Jones. However, GOPAC seeks dismissal of Count II to the extent it seeks indemnity related to other 2009 Northeast Outbreak personal injury cases. As detailed in Plaintiff's Response, there have been multiple other cases filed in a variety of jurisdictions in the Northeast. (See Fairbank Response (ECF No. 27) at 9.) Two such cases, Long and Smith, were already resolved before this Court. See Long v. Fairbank Farms Reconstruction Corp., D. Me Docket # 1:09-cv-592-GZS & Smith v. Fairbank Farms Reconstruction Corp., D. Me Docket # 2:10-cv-60-GZS. GOPAC seeks dismissal of Count II to the extent Fairbank seeks indemnity on any of these other resolved cases and/or future to-be-filed cases. Fairbank has indicated in response that it is not seeking to recover damages for claims asserted by other plaintiffs not joined in this action. (See Fairbank Response at 1 n. 1 & 9.) Thus, to the extent that GOPAC seeks dismissal of Count II as to these other plaintiff's damages,

it appears Fairbank has agreed to so limit Count II and, thus, GOPAC's requested dismissal of Count II will be granted without objection.

The Court is left to consider its ability to assert personal jurisdiction over GOPAC in connection with the breach of contract crossclaim asserted in Count I. By way of this crossclaim, Fairbank essentially seeks two separate categories of damages. The first category consists of its losses and expenses related to the recall.[1] The second category of damages tied to Count I are lost profits; specifically, Fairbank's lost business relationships and goodwill tied to the 2009 Northeast Outbreak. In its Response and at the conference, counsel for Fairbank specifically referenced Fairbank's loss of two large customers, Trader Joe's and Price Chopper, as included under this category.[2] (See Fairbank Response (ECF No. 27) at 10.)

The record plainly does not support a finding that GOPAC has continuous and systematic activity in Maine or that it is "at home" in Maine. Goodyear Dunlop Tires Operations S.A. v. Brown, --- U.S. ---, 131 S. Ct. 2846, 2851 (2011). As a result, Fairbank has not endeavored to meet the burden for general personal jurisdiction as to GOPAC. Turning to specific personal jurisdiction, there is nothing to suggest that GOPAC's alleged breach of its contract with Fairbank arises out of Maine-based activities by GOPAC. Likewise, the record does not support a finding that GOPAC has purposely availed itself of the privilege of selling beef products in Maine. Rather, at best, GOPAC is a large business that places beef products into the stream of commerce from its home base in Nebraska knowing that those products will be consumed throughout the United States. This "mere awareness" that products will reach Maine via the

---

[1] At the August 31st conference, counsel for Fairbank represented that these recall-related losses exceed $500 million.

[2] Notably, Fairbank's crossclaim complaint does not specifically allege the loss of Trader Joe's or Price Chopper as customers, nor does it allege that any store operating in Maine ended their relationship with Fairbank as a result of the recall tied to the 2009 Northeast Outbreak.

stream of commerce cannot support the exercise of specific jurisdiction as to Fairbank's breach of contract crossclaim. Asahi Metal Indust. Co. Ltd. v. Superior Court of California, 480 U.S. 102, 105 (1987); see also Goodyear Dunlop, 131 S. Ct. at 2854-57 (discussing how stream of commerce doctrine cannot serve as a basis for general personal jurisdiction). The failure to satisfy these first two prongs of the minimum contacts analysis means that the Court cannot exercise specific personal jurisdiction over GOPAC on Fairbank's breach of contract claim regardless of how efficient it might be to try that claim with the other claims pending in the present case.[3]

Recognizing the difficulties with satisfying the requirements for specific personal jurisdiction over Count I, Fairbank's primary response to GOPAC's lack of personal jurisdiction argument is: pendent personal jurisdiction. Under this doctrine, "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004).

As Fairbank readily and reasonably acknowledges, the First Circuit has not yet explicitly endorsed the doctrine of pendent personal jurisdiction. (See Fairbank Response at 4.) However, Fairbank points to two other District of Maine cases where pendent personal jurisdiction was recognized. See In re New Motor Vehicles Canadian Exp. Antitrust Litig., 335 F. Supp. 2d 126, 128 (D. Me. 2004) (concluding "the First Circuit will recognize pendent personal jurisdiction, agreeing with the other seven Circuits that have addressed the issue"); Glenwood Farms, Inc. v.

---

[3] Fairbank cites Federal Rules of Civil Procedure 13 and 18 in support of its argument that Count I is a permissible crossclaim. While the Court agrees with this analysis of the procedural rules, those rules do not address the issue of personal jurisdiction.

Cozen O'Connor, 666 F. Supp. 2d 154, 166 (D. Me. 2009). In the Court's assessment, both of those cases are factually and procedurally distinguishable from Fairbank's attempt to invoke pendent personal jurisdiction.

In re New Motor Vehicles Canadian Export Antitrust Litigation was a multi-district litigation handled by Judge Hornby. Judge Hornby, having already found the necessary personal jurisdiction over the defendants on federal antitrust claims, agreed to exercise pendent personal jurisdiction as to various state law claims that the plaintiffs added in order to pursue monetary damages. See 335 F. Supp. 2d at 128-129. In doing so, Judge Hornby concluded that the state and federal claims arose out of "the same nucleus of operative facts" and that the exercise of pendent personal jurisdiction served the interests of "'judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties.'" Id. at 129 (quoting Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004).) In Glenwood Farms, while this Court recognized that the potential to exercise pendent personal jurisdiction, it ultimately did not do so. Rather, it found that the fraud claim, which served as the "anchor" for any pendent jurisdiction, actually failed to state a claim upon which relief could be granted. See 666 F. Supp. 2d at 173. As a result, the Court dismissed without prejudice the claims that Plaintiff argued could be heard under the Court's pendent personal jurisdiction. Id. In short, the precedents cited by Fairbank do not dictate that the Court must exercise pendent personal jurisdiction over the breach of contract crossclaim asserted here.

In the Court's assessment, it is not readily apparent that Fairbank's broad breach of contract crossclaim arises out of the same nucleus of operative facts as Plaintiff's personal injury claims and the indemnity crossclaims directly tied to this Jones' action. From Plaintiff's perspective, the alleged factual "nucleus" of this case is M.J.'s *E. coli* O157:H7 infection that left

him hospitalized for three weeks between September and October of 2009. By contrast, the factual "nucleus" of Fairbank's breach of contract case stretches to include the entirety of Fairbank's recall efforts following the 2009 Northeast Outbreak as well as Fairbank's loss of two specific retail chain customers (neither of whom is the alleged source of the ground beef purchased by Plaintiff's family). Assuming for the moment that the Court could find that these operative facts can be characterized as having "the same nucleus" of the 2009 Northeast Outbreak, this requisite finding would not make the exercise of pendent personal jurisdiction mandatory.

Rather, the decision to exercise pendent personal jurisdiction is a discretionary one. See, e.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig., 335 F. Supp. 2d at 128; Action Embroidery Corp., 368 F.3d at 1181. In exercising this discretion, the Court considers overall fairness to the litigants, judicial economy, as well as the desire to avoid piecemeal litigation. In this case, these considerations do not support Fairbank's proposed "piggybacking" of its crossclaim for breach of contract. (Fairbank Response at 4.) Therefore, the Court, in an exercise of its discretion, declines Fairbank's invitation to exercise pendent personal jurisdiction over Count I. Primarily, this case is a personal injury case brought on behalf of a single Maine child. In the context of this action, Fairbank's broad crossclaim for all recall costs and lost profits would become "the tail that wagged the dog." In short, while Plaintiff has not taken any position on the pending motion, the Court remains concerned that it is simply unfair to have Plaintiff's claim dwarfed and delayed by a high stakes business dispute between the two Defendants.[4]

---

[4] This concern is magnified under the circumstances of this case where Fairbank is currently a debtor seeking Chapter 11 protection before the United States Bankruptcy Court in the District of Delaware. (See Notice of Suggestion of Bankruptcy (ECF No. 34).) Given the amount of damages that Fairbank seeks to recover via Count I, the breach of contract claim would appear to be a significant asset of Fairbank. While the Court recognizes that the stay was lifted by agreement of the parties and with the approval of the Bankruptcy Court, there is little in the record to suggest that the Bankruptcy Court understood the nature and breadth of the breach of contract crossclaim. (See June 15, 2012 Agreed Order Lifting Stay (copy provided at ECF No. 45-1).)

With respect to avoiding piecemeal litigation, the Court takes judicial notice of the number of different cases and jurisdictions in which Fairbank and GOPAC have litigated issues related to the 2009 Northeast Outbreak. While Fairbank made a request for consolidation to the Judicial Panel on Multidistrict Litigation in January 2012, the request was denied by the MDL panel on April 17, 2012. (See Order Denying Transfer (ECF No. 36).) In short, the disputes between Fairbank and GOPAC will continue to be litigated in a piecemeal fashion regardless of whether this Court exercises pendent personal jurisdiction over Count I.

Having handled two prior personal injury cases tied to the 2009 Northeast Outbreak, the Court is well aware of the potential that the only claim that may remain for trial in this case is the crossclaim at issue in this Motion. As a standalone claim, a breach of contract claim between a New York company and a Nebraska supplier would not be tried before a Maine jury. It seems far from just and efficient to have out-of-state litigants, out-of-state counsel, and out-of-state witnesses appear in Maine for such a trial. Rather, it would appear that the claim for recall costs and lost profits could be more readily resolved in Nebraska or New York.[5]

Having found that the Court lacks the requisite personal jurisdiction over GOPAC on the contested crossclaim for breach of contract, the Court need not address the GOPAC's alternative arguments regarding ripeness and subject matter jurisdiction. Rather, the Court dismisses Count I for lack of personal jurisdiction.

## IV. CONCLUSION

For the reasons just given, the Court hereby GRANTS GOPAC's Partial Motion to Dismiss (ECF No. 23). Count I is hereby dismissed without prejudice. With respect to Count II, the claim shall remain to the extent it seeks contractual indemnity for any amounts related to

---

[5] This is particularly the case when the contract at issue is governed by New York law. See Long v. Fairbank Farms Reconstruction Corp., 824 F. Supp. 2d 197, 201 (D. Me. 2011).

Plaintiff's claims. However, Count II is dismissed without objection and without prejudice to the extent it seeks contractual indemnity for any amounts related to other personal injury claims pressed by persons sickened during the 2009 Northeast Outbreak.

     SO ORDERED.

                                              /s/ George Z. Singal
                                              United States District Judge

Dated this 11th day of September, 2012.